UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-61219-CIV-DIMITROULEAS

YINI TORRES,

    Plaintiff,

vs.

HUMANA MARKETPOINT, INC.
And JOHN JACKSON,

    Defendants.
_____/

**ORDER GRANTING MOTION TO REMAND**

THIS CAUSE is before the Court on Plaintiff's Motion to Remand Plaintiff's Complaint to Broward Circuit Court [DE 12] (the "Motion"). The Court has carefully considered the Motion, the Response [DE 15], and is otherwise fully advised in the premises.

**I.    Background**

This action was filed by Plaintiff, Yini Torres, on May 3, 2016, in the Circuit Court of the Seventeenth Judicial Circuit, in and for Broward County, Florida, against Defendants Humana MarketPOINT, Inc. ("Humana") and John Jackson. [DE 1]. This action arises from Humana's alleged termination of Torres as an employee on the basis of her pregnancy and disability in violation of the Florida Civil Rights Act (the "FCRA"), Fla. Stat. § 760.10, and Jackson's alleged tortious interference with Torres's employment with Humana on the basis of her pregnancy and disability. [DE 1-2]. Humana removed to federal court on June 7, 2016. *Id.*

Humana alleges diversity jurisdiction under 28 U.S.C. § 1332(a) as the basis for removal. Under § 1332(a), federal district courts have original jurisdiction over civil actions between

1

citizens of different states and where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). There is no diversity of citizenship as between all three parties. Torres is a Florida citizen, Humana is a Kentucky citizen, and Jackson is a Florida citizen. [DE 1 ¶¶ 21-23]. Regardless, Humana contends that diversity of citizenship is satisfied for jurisdictional purposes because Jackson has been fraudulently joined to this action.

## II. Standard of Review

To establish fraudulent joinder on the part of Torres, Humana must show: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; (2) the plaintiff has fraudulently pled jurisdictional facts; or (3) that there is no joint, several or alternative liability between the diverse and non-diverse defendants and that the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). The Eleventh Circuit has explained that

> The standard for evaluating whether the plaintiff can establish a cause of action against the resident defendant is very lenient: federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court.

*Johnson v. Bank of Am., N.A.*, 594 F. App'x 953, 956 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 2895, 192 L. Ed. 2d 927 (2015) (quotations omitted). The inquiry into "whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (quoting *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir.1998)). The appropriate standard for review of the parties' submissions

2

is akin to the summary judgment proceeding. *Id.*at 1323. Even so, "[f]or a remand, the plaintiff's burden is much lighter" than on summary judgment. *Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997). "[A]fter drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law *might* impose liability on the facts involved." *Id.*at 1541-42 (quotation omitted).

### III.    Analysis

Here, there is no suggestion that Torres has committed outright fraud in alleging the jurisdictional facts. Nor does Humana argue that there is no joint, several or alternative liability between the Humana and Jackson and that the claim against the Humana has no real connection to the claim against Jackson. Rather, Humana contends that fraudulent joinder is demonstrated because there is no possibility that Torres can establish a cause of action against Jackson. The issue the Court must address, then, is whether there is "even a possibility" that a Florida state court would find that Torres states a cause of action against Jackson for tortious interference with a business relationship. *Johnson*, 594 F. App'x at 956.

The elements of tortious interference with a business relationship are:   (1) the existence of a relationship between the plaintiff and her employer, under which the plaintiff has legal rights; (2) the employee-defendant's knowledge of the relationship; (3) an intentional and unjustified interference with that relationship; (4) by a third party; (5) resulting in damages to the plaintiff caused by the interference. *Alexis v. Ventura*, 66 So. 3d 986, 987 (Fla. 3d DCA 2011). A claim for tortious interference with a business relationship is generally not actionable because the terminating employee is considered to be a party to the employment relationship, and thus not a

3

third party. *Id.* at 988. Even so, an exception exists where the employee-defendant was acting "solely with ulterior purposes and the advice is not in the principal's best interest." *Id.* (quoting *O.E. Smith's Sons, Inc., v. George,* 545 So.2d 299 (Fla. 1st DCA 1989)); *see Silverman v. Wells Fargo Ins. Servs. USA, Inc.*, 20 F. Supp. 3d 1357, 1363 (S.D. Fla. 2014) (finding no fraudulent joinder and remanding case where plaintiff could state a claim for tortious interference against plaintiff's co-worker and supervisor, who allegedly caused the plaintiff to be terminated from the mutual employer "because of personal animus and for their own personal financial benefit.")

According to the Complaint, Torres was employed by Humana from November 2005 until August 3, 2015, when that employment was terminated based upon her pregnancy, disability, and for complaints of discrimination [DE 1-2 ¶ 5-6]. The tortious interference claim against Jackson alleges that Torres had a business relationship with Humana that was not evidenced by a written contract, and that Jackson had knowledge of the agreement. [DE 1-2 ¶¶ 18-19]. Jackson "intentionally and unjustifiably interfered with the agreement," taking actions "with ulterior motives and detrimental to the interests of Humana." [DE 1-2 ¶ 20]. Jackson's actions were based on Torres's pregnancy and disability, were not in the interests of Humana, and damaged Torres. [DE 1-2 ¶¶ 20-21]. In supplement to the pleadings, Torres has submitted a declaration in support of the Motion to Remand. [DE 13]. The Declaration states that during Torres's employment with Humana she had "excellent performance," but that when she informed Jackson, her supervisor, of her high-risk pregnancy and need for time off, Jackson's "attitude . . . changed and he began looking for issues with [her] performance." [DE 13 ¶¶ 2, 5, 7]. Jackson was angry that Torres's delivery date coincided with the open enrollment period of Medicare and Obamacare and told Torres that her "absence would jeopardize his selling season." [DE 13 ¶ 5]. Despite the fact that

4

Jackson had no role in administering the Family and Medical Leave Act of 1993, 29 U.S.C. § 1601, et seq. (the "FMLA"), Jackson would send harassing e-mails to advise Torres of how many hours of FMLA she had used and that she would be subject to attendance policies upon FMLA exhaustion. [DE 13 ¶ 6].[1] Torres states that she used a headset to receive work calls, but that there were problems with the use of the headset, resulting in calls not always showing up on her screen, which she reported to Jackson and technical support. [DE 13 ¶ 8]. Despite Torres's reports, the headset issues were never remedied, nor did she receive any warnings regarding abandonment of calls. [DE 13 ¶¶ 8-9]. Torres was ultimately terminated, allegedly for abandonment of calls, but in reality based on her pregnancy and disability. [DE 13 ¶ 9].

In response, Humana has provided the Declaration of Jamie Meyer, Humana's Human Resources Manager. [DE 15-3 ¶ 3]. Meyer states that Torres was a Telesales Specialist at Humana and that in July 2015, Workforce Management, the team that audits and oversees call volume and patterns, advised management that Torres's calls were not being answered. [DE 15-3 ¶¶ 4-6]. An investigation by Jackson and Jackson's superior yielded the conclusion that Torres was intentionally avoiding phone calls and the recommendation that her employment with Humana be terminated for call abandonment in violation of company policy. [DE 15-3 ¶¶ 7-8]. Meyer discussed the recommendation with Jackson and Jackson's superior, and agreed to proceed with termination. [DE 15-3 ¶¶ 9-11].

Humana compares this case to *Harris v. P'ship*, No. 5:15-CV-529-OC-30PRL, 2016 WL 231191, at *1 (M.D. Fla. Jan. 15, 2016). In parallel with the instant action, in *Harris*, the plaintiff sued both her former employer for gender discrimination under the FCRA and her former

---

[1] Plaintiff has attached examples of the e-mails to the Declaration. [DE 13 at 4-10]. Humana characterizes the e-mails as "normal business communications from a manager to a subordinate." [DE 15 at n.2]. Whether the e-mails are "harassing" or are "normal business communications" is a question of fact.

5

supervisor for tortious interference. *Harris*, 2016 WL 231191, at *1. Defendants removed to federal court based on diversity jurisdiction, alleging that the supervisor-defendant had been fraudulently joined by the plaintiff to defeat diversity. *Id.* The defendants produced evidence that the supervisor sought to discharge the plaintiff for a legitimate business purpose—providing discounts to ineligible customers in contravention of the employer's code of conduct. *Id.*, at *3. Though the plaintiff submitted an affidavit stating that she did not "intentionally" provide such discounts, the affidavit "more or less conced[ed] that she may have provided the unauthorized discounts, albeit unintentionally." *Id.* Here, Torres's affidavit suggests that even if calls were not received, the culprit was the headset system—the problems with which Torres reported to Jackson to no avail. Moreover, regardless of such distinction from *Harris*, *Harris* is not controlling on this Court and the Court is not persuaded by it. This Court need only determine that there is a possibility that a Florida court will determine that Torres has stated a claim for tortious interference against Jackson—the Court need not determine the likelihood of Torres ultimately prevailing on her claim. Indeed, it is more appropriate for the Florida state courts to determine the contours of the "solely with ulterior purpose" exception to the general bar on tortious interference claims against co-employees. The undersigned merely concludes that Torres has an arguable claim. As a result, the Court finds that Jackson has not been fraudulently joined, and that diversity of citizenship is not satisfied. Absent diversity of citizenship, the Court must remand this action to state court.[2]

**IV.    Conclusion**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Motion [DE 12] is **GRANTED**. The Clerk is directed to **REMAND** this case to state court, **CLOSE** this case, and

---

[2] The Court need not reach the issue of whether the amount in controversy is satisfied under 28 U.S.C. § 1332(a).

**DENY** all pending motions as moot.

**DONE AND ORDERED** this 5th day of August 2016, in chambers at Fort Lauderdale, Broward County, Florida.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:
Counsel of Record